# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION

| | |
|---|---|
| TERESA FLEMING, individually and on behalf of all others similarly situated, | § § § Civil Action No. _____ § § JURY TRIAL DEMANDED § § COLLECTIVE ACTION |
| Plaintiff, | |
| v. | |
| MURPHY REHABILITATION, INC., | |
| Defendant. | |

## PLAINTIFF'S ORIGINAL FLSA COLLECTIVE ACTION COMPLAINT

Plaintiff Teresa Fleming ("Plaintiff" or "Fleming"), individually and on behalf of all other similarly situated employees, files this Complaint against Murphy Rehabilitation, Inc. ("Defendant" or "Murphy"), showing in support as follows:

### I. NATURE OF ACTION

1. This is a civil action brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219, and the Portal-to-Portal Act, 29 U.S.C. §§ 251-262 (collectively, the "FLSA") seeking damages for Defendant's failure to pay Plaintiff time and one-half the regular rate of pay for all hours worked over 40 during each seven-day workweek.

2. An employer is not required to pay an employee for meal periods if the employer can satisfy its burden of showing that the employee received a bona fide meal period. However, Defendant cannot satisfy this burden because it required nurses and technicians to remain responsible for patient care throughout their shifts, including during meal periods. Nurses and technicians frequently missed meal periods, and even when they attempted to eat their meal periods were regularly interrupted by work demands. Nonetheless, Defendant automatically deducted a thirty-minute period for every shift worked by one of its nurse/technician employees. In short, Defendant used the nurses/technicians' meal periods for its own predominant benefit.

3. Defendant's practice of failing to relieve nurses and technicians of their duties during meal periods, while simultaneously using timekeeping software to auto deduct meal periods from the total time paid per shift (on the pretext of accounting for meal periods which nurses/technicians were not free to take without interruption), had the effect of depriving nurses and technicians of overtime compensation due to them under the FLSA in each workweek in which they worked more than forty (40) hours, and straight-time compensation at their respective contractual hourly rate(s) in weeks in which they worked fewer than forty (40) hours in a week.

4. Plaintiff brings this lawsuit individually and as an FLSA collective action on behalf of all similarly situated current and former nurse/technician employees of Defendant who, like Plaintiff, were deprived of federally guaranteed overtime pay for all hours worked over 40 in each seven-day workweek in the time period of three years preceding the date this lawsuit was filed and forward (the "Collective Action Members").

5. Plaintiff and the Collective Action Members seek all damages available under the FLSA, including back wages, liquidated damages, legal fees, recoverable costs, and post-judgment interest.

## II. THE PARTIES

### A. Plaintiff Teresa Fleming

6. Plaintiff is an individual residing in Glynn County, Georgia. Plaintiff has standing to file this lawsuit.

7. Plaintiff began working for Defendant as a certified nurse assistant ("CNA") on or about July 7, 2023, to November 11, 2023.

8. At all times Plaintiff was paid on an hourly basis. Plaintiff's hourly rate was $13 per hour.

9. Plaintiff's written consent to participate in this lawsuit is filed along with this Original Complaint as Exhibit 1.

### B. Collective Action Members

10. The putative Collective Action Members are all current and former nurse and technician employees of Defendant who are/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek due to Defendant's practice of deducting 30 minutes of work time from each shift worked and not paying for same. Because Defendant did not pay all overtime premium compensation due to its employees who routinely worked in excess of 40 hours per workweek, Plaintiff and the putative Collective Action Members are all similarly situated within the meaning of Section 216(b) of the FLSA.

11. The relevant time period for the claims of the putative Collective Action Members is three years preceding the date this lawsuit was filed and forward.

### C. Defendant Murphy Rehabilitation, Inc.

12. Defendant is a domestic corporation organized under the laws of the State of North Carolina.

13. Defendant is covered by the FLSA as a "named enterprise." *See* 29 U.S.C. § 203(s)(1)(B).

14. Defendant may be served with summons through its registered agent: James Alan Schmidlin, 130 Edinburgh South Drive, Suite 208, Cary, North Carolina 27511.

## III. JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this case based on federal question jurisdiction pursuant to 28 U.S.C. § 1331, because Plaintiff's claims are based on federal law, namely the FLSA. *See* 29 U.S.C. § 216(b).

16. The United States District Court for the Western District of North Carolina has personal jurisdiction over Defendant because Defendant is located in North Carolina and in this District and Division, and because many of the acts complained of and giving rise to the claims alleged occurred in North Carolina and in this District.

17. Venue is proper in this District and/or Division pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to all claims occurred in this District, and in this Division.

## IV. FACTUAL BACKGROUND

18. Plaintiff worked as a CNA classified as a W-2 employee at Defendant's nursing home facility Murphy Rehabilitation & Nursing[1] from on or about July 7, 2023, to November 11, 2023. At the time of hiring, Plaintiff agreed to provide services as a nurse in exchange for Defendant's agreement to provide hourly compensation for all hours worked under forty (40) at the specified regular rate of $13 per hour.

---

[1] https://www.murphyrehabandnursing.com/ (last visited on 6/4/2024).

19. Plaintiff and similarly situated nurses/technicians are regularly scheduled to work shifts several times per week at Defendant's nursing home location(s), for which they receive some pay on an hourly basis. Plaintiff frequently worked successive shifts such that Plaintiff worked over forty (40) hours in a workweek, like many other nurses/technicians working at Defendant's nursing home locations. Accordingly, Plaintiff and the Collective Action Members frequently worked in excess of forty (40) hours in a workweek.

20. Defendant frequently requires Plaintiff and similarly situated nurses/technicians to work through promised meal breaks, and even when such nurses/technicians might be afforded meal breaks, they were typically interrupted or subject to interruption by other nurses and technicians on duty, nurse managers, patients, their families, and others at Defendant's nursing home location(s).

21. In such workweeks, as the result of a common wage payment policy and/or practice equally applicable to Plaintiff and the Collective Action Members, Defendant failed to pay all due and owing overtime wages to Plaintiff and the Collective Action Members because it automatically deducted meal breaks of approximately thirty minutes for each shift. Pursuant to federal law, for each such deducted meal break in a workweek of over forty (40) hours, Defendant will owe Plaintiff and the Collective Action Members backpay at the rate of time and one-half their respective hourly rates of pay.

22. Defendant is and was familiar with the demands of the nursing and healthcare industry in general and specific to its own operations, but it deliberately chose to keep its labor costs low by failing to hire sufficient nurses/technicians per shift to allow its employees to take full, uninterrupted meal breaks. Defendant also failed to take measures against its nurses and technicians being interrupted or being subject to interruption during meal breaks. Defendant required and permitted its overworked nurses/technicians to work during meal breaks for Defendant's benefit. Defendant knew and expected that Plaintiff and similarly situated employees would work through unpaid "meal breaks," and this was a daily occurrence. Defendant's supervisory and managerial employees routinely interrupted Plaintiff and similarly situated employees' "meal breaks," and made work demands upon them. Defendant's supervisory and managerial employees had actual knowledge of the shifts Plaintiff and similarly situated employees worked and that those shifts did not include bona fide meal breaks to the predominant benefit of Defendant.

23. Plaintiff and similarly situated employees were expected to respond to doctor questions, questions of patient families, patient emergencies, questions from co-workers, questions from supervisors, and were expected to answer the phone in the breakroom along with being subject to return to work at each and every promised "meal break" in every shift. Defendant knew and/or had reason to know that nurses/technicians performed such work during their unpaid "meal breaks." It was

Defendant who required Plaintiff and similarly situated employees to remain available to respond to work demands at any time during their shift, including during supposed "meal breaks." Moreover, Plaintiff and similarly situated employees frequently performed work for Defendant during unpaid "meal breaks" in plain sight of Defendant's supervisory and managerial employees, often at their specific behest.

24. Despite Defendant's actual knowledge that Plaintiff and similarly situated employees worked during supposed "meal breaks," Defendant willfully failed to compensate them for such work, electing instead to accept the benefits of Plaintiff and similarly situated employees' work for free.

25. Given Defendant's supervisory and managerial employees knowledge from direct observation and from their general knowledge of Defendant's healthcare operations that Plaintiff and similarly situated employees regularly worked through uncompensated "meal breaks," Defendant had both actual and constructive knowledge that Plaintiff and similarly situated employees were not compensated at all for their many hours of work during supposed "meal breaks," let alone at the relevant agreed-upon hourly rate or federally-mandated time and one-half rate for overtime hours of work.

26. Evidence reflecting the number of uncompensated meal break hours worked by each Collective Action Member, as well as their applicable regular and overtime rate, is in the possession of Defendant. Actual damages can be calculated

easily once Defendant has produced complete payroll records for the class. The absence of a bona fide meal break makes all unpaid meal break time compensable, and all that remains is to establish the number of shifts worked by Plaintiff and similarly situated employees in the weeks in which they worked more than 40 hours. Each shift worked will entitle such employees to half an hour of pay at their time-and-one-half rate, depending upon whether the week in question is one in which forty were worked. The information needed to calculate damages—specifically the dates of the shifts worked, the total number of hours worked per week, and the base hourly rate of pay for each worker—exists right now in Defendant's timekeeping and payroll databases. The damage calculation itself will be a straightforward accounting process.

## V. FLSA CLAIMS FOR OVERTIME PAY

27. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

28. All conditions precedent to this suit, if any, have been fulfilled.

29. At all relevant times, Defendant is/was an eligible and covered employer under the FLSA. *See* 29 U.S.C. *See* 29 U.S.C. § 203(s)(1)(B).

30. Plaintiff and the putative Collective Action Members are/were employees of Defendant pursuant to the FLSA. 29 U.S.C. § 203(e).

31. Plaintiff and putative Collective Action Members were not exempt from overtime under the FLSA.

32. Plaintiff and putative Collective Action Members are/were paid on an hourly/daily rate basis by Defendant.

33. At times relevant to this lawsuit, Plaintiff and putative Collective Action Members work/worked in excess of forty (40) hours per seven-day workweek as employees of Defendant.

34. Plaintiff and putative Collective Action Members are/were not paid for all compensable hours of work when they worked for Defendant.

35. Defendant is/was required to pay Plaintiff and putative Collective Action Members time and one-half their respective regular rates of pay for all hours worked over 40 in each relevant seven-day workweek. 29 U.S.C. § 207(a)(1).

36. Defendant failed to pay Plaintiff and putative Collective Action Members one and one-half times their respective regular rates of pay for all hours worked over 40 in each and every seven-day workweek during the time period relevant to this lawsuit in violation of the FLSA.

37. Defendant's violation of the FLSA, as described above, is/was willful within the meaning of 29 U.S.C. § 255(a). At all material times, Defendant was aware that Plaintiff and putative Collective Action Members were not paid overtime

premium pay at the rate of time and one-half their respective regular rates of pay for all hours worked over forty in a seven-day workweek.

38. Plaintiff and putative Collective Action Members specifically plead recovery for the time period of three years preceding the date this lawsuit was filed and forward for their FLSA claim as the result of Defendant's willful conduct. *See* 29 U.S.C. § 255(a).

39. Plaintiff and putative Collective Action Members seek all damages available for Defendant's failure to timely pay all overtime wages owed, including back wages, liquidated damages, reasonable attorneys' fees and costs, and post-judgment interest.

## VI. COLLECTIVE ACTION CLAIMS

40. Plaintiff incorporates the preceding paragraphs by reference as if set forth fully in this section.

41. Where, as here, the employer's actions or policies were effectuated on a companywide basis, notice may be sent to all similarly situated persons on a companywide basis.

42. Plaintiff seeks to bring claims under the FLSA, 29 U.S.C. § 216(b), individually and on behalf of a collective preliminarily defined as:

> all current and former nurse and technician employees of Defendant who are/were not paid time and one-half their respective regular rates of pay for all hours worked over 40 during each seven-day workweek due to Defendant's policy/practice of automatically deducting 30

minutes of work time from each shift worked and not paying for same for the time period of three years preceding the date this lawsuit was filed and forward.

43. Plaintiff has personal knowledge that other putative Collective Action Members were paid pursuant to the same policy/practice, namely, that approximately thirty minutes of work per shift was automatically deducted from their wages for supposed "meal breaks" regardless of whether the employee was fully relieved or received an uninterrupted meal break at all, leading to a failure to pay overtime wages in weeks where such employees worked over forty (40) hours.

44. Plaintiff has personal knowledge that this policy/practice did not apply uniquely to Plaintiff, but rather affected all the putative Collective Action Members.

45. The putative Collective Action Members are similarly situated to Plaintiff and to one another, within the meaning of Section 216(b) of the FLSA.

46. The putative Collective Action Members are not exempt from receiving overtime premium pay under the FLSA. Defendants' failure to pay overtime wages results from generally applicable policies or practices and does not depend on the personal circumstances of the putative Collective Action Members.

47. The specific job titles or precise job responsibilities of each putative collective action member do not prevent collective treatment.

48. Although the exact amount of damages may vary among the putative Collective Action Members, their respective damages are easily calculable using a simple formula uniformly applicable to all of them.

49. Plaintiff reserves the right to establish sub-classes and/or modify class notice language as appropriate in any motion to certify a collective action or other proceeding.

50. Plaintiff further reserves the right to amend the definition of the putative class, or subclasses therein, if discovery and further investigation reveal that the putative class should be expanded or otherwise modified.

### 51. JURY DEMAND

52. Plaintiff demands a jury trial individually and on behalf of the putative Collective Action Members on all issues to which they are entitled to a jury trial.

### 53. DAMAGES AND PRAYER

54. Plaintiff asks that the Court issue summons for Defendant to appear and answer, and that Plaintiff and the putative Collective Action Members be awarded a judgment against Defendant for the following or order(s) from the Court for the following:

   a. An order requiring notice to be issued to all putative collective action members;

   b. All damages allowed by the FLSA, including back wages;

   c. Liquidated damages in an amount equal to back wages;

d. Legal fees, costs and expenses, as permitted under the FLSA;

e. Post-judgment interest, as permitted under the FLSA;

f. All other relief to which Plaintiff and the putative Collective Action Members may be justly entitled.

Respectfully submitted,

**CROMER BABB & PORTER, LLC**

BY: *s/Jacob J. Modla*
Jacob J. Modla (Bar #17534)
Jake@cromerbabb.com
1418 Laurel Street, Suite A
Post Office Box 11657
Columbia, South Carolina 29211
803-799-9530 - Telephone


Ricardo J. Prieto
rprieto@wageandhourfirm.com
Melinda Arbuckle
marbuckle@wageandhourfirm.com
**Wage and Hour Firm**
5050 Quorum Drive, Suite 700
Dallas, TX 75254
214-489-7653 – Telephone
469-319-0317 – Facsimile
Pro Hac Vice Forthcoming


COUNSEL FOR PLAINTIFF AND PUTATIVE COLLECTIVE ACTION MEMBERS

August 8, 2024